IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MARK HUGHES and CORY HUGHES Plaintiffs,** | § § § | |
| **v.** | § | **CIVIL ACTION NO.** <u>3:18-cv</u>-1770 |
| | § | |
| **CITY OF DALLAS, TEXAS, DALLAS POLICE DEPARTMENT,** | § § § | **JURY TRIAL DEMANDED** |
| **Defendants.** | § | |
| | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

NOW COMES Mark Hughes and Cory Hughes, Plaintiffs, complaining of Defendants City of Dallas, Texas ("the "City"), Dallas Police Department ("DPD") and for cause would show the Honorable Court as follows:

**NATURE OF THE ACTION**

1.     This is an action brought by the Plaintiffs against the City of Dallas, Texas for suppression of the right to bear arms, free speech, unlawful arrest and unlawful detention under the color of law in violation of Plaintiffs' individual rights under the First, Second, Fourth and Fourteenth Amendment of the United States Constitution and in violation of their civil rights pursuant to 42 U.S.C. § 1983.

2.     Plaintiffs allege that the City of Dallas, Texas,  Mayor Mike Rawlings ("Rawlings"), Chief of Police David Brown ("Brown") and the Dallas City Council (collectively

*Plaintiffs' Original Complaint*          1 | Page

referred herein as the "Policymakers") had a duty, but failed to implement and/or enforce policies, practices and procedures for the Dallas Police Department that respected Plaintiffs' constitutional rights.  For these civil rights violations and other causes of action discussed herein, Plaintiffs seek answers and compensation for their damages and the wrongful detention of Mark Hughes and Cory Hughes.

## PARTIES

3. Plaintiff Mark Hughes is a citizen of the United States and a resident of Mansfield, Texas.

4. Plaintiff Cory Hughes is a citizen of the United States and a resident of Mansfield, Texas.

5. Defendant, the City of Dallas ("Defendant City"), is and was at all relevant times mentioned, a municipality duly organized and existing under the laws of Texas.  Defendant City's Police Department, Dallas Police Department ("DPD"), is an official subdivision of Defendant City, and all officers employed by the DPD are employees of Defendant City.

6. Defendant City was at all times mentioned engaged in owning, operating, maintaining, managing and doing business as DPD, and in the business of public safety for the residents of Dallas, Dallas County.

7. The City of Dallas operates the Dallas Police Department ("DPD"). The City of Dallas funds and operates the DPD, which, along with the Dallas City Council, the Dallas City Manager, Dallas Mayor Rawlings and Chief Brown are responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The DPD is also responsible for preventive, investigative, and enforcement services for all citizens of The City of Dallas.

8.      Service of Process may be had on the CITY OF DALLAS by serving its City Attorney, Thomas Perkins, at Dallas City Hall, 1500 Marilla Street, Room 7DN, Dallas, TX 75201-6622. The other Defendants may be served in accordance with Rule 5 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

9.      Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. §1983, to redress the deprivation of rights, privileges and immunities guaranteed to Plaintiffs by constitutional and statutory provisions.  Plaintiffs further invoke the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas.

10.     Venue is appropriate in the United States District Court; Northern District of Texas, Dallas Division, since Dallas County is the location of the events made the basis of this cause of action.

11.     Plaintiffs timely filed a notice of claim with the City.

## FACTUAL ALLEGATIONS

12.     On Thursday, July 7, 2016, Mark and Cory Hughes attended an anti-police brutality rally in Dallas, Texas after the shooting death of licensed gun-holder Philando Castile and unarmed Alton Sterling.

13.     In protest of the shooting death of Philando Castile, Mark Hughes brought his long-gun with him to the protest as a symbol that African American men had the right to exercise their Second Amendment privileges without fear of being gunned down.

*Plaintiffs' Original Complaint*                3 | Page

14.     The Hughes Brothers participated in the peaceful rally without incident along with roughly 800 other people that marched from Belo Garden Park, up Commerce Street towards El Centro. The rally was also attended by several other counter-protesters who were also openly displaying firearms during the protest.

15.     Upon arrival, Mark Hughes presented his weapon to a nearby law enforcement officer who met Mark and briefly inspected the weapon. After which Mark joined the protesters and was seen with the weapon during plaintiff, Cory Hughes', speech at the rally and continually during the course of the march with the weapon held over his shoulder attached to a gun strap.

16.     At about 8:45 p.m. the protesters had begun to disperse. However, approximately ten minutes later, shots rang out. Hearing the shots Cory Hughes immediately found his brother Mark and told him to turn his rifle over to police officers on the scene so that Mark would not be mistaken as the shooter. Mark turned his rifle in to an officer received a receipt and a business card with contact information to retrieve his rifle the following day. This exchange was captured by a cellphone recording. The Hughes brothers then began to assist to the Dallas Police Department by helping people evacuate the area safely.

17.     Around 10:52pm, the Dallas Police Department tweeted out a photo of Mark Hughes holding his AR-15 rifle, declaring with the caption "This is our suspect! Please help us find him!"

18.     Mark was headed towards his car when he received a phone call that he had been identified as the suspect involved in the shooting by DPD. Mark immediately went to a small group of police officers and turned himself. The officer placed him under arrest, confiscated his shirt and car keys and drove him to police headquarters.

19.     After hearing of his brother's arrest Cory Hughes traveled to the police headquarters as well. Upon his arrival he was also detained for questioning.

20.     Both Cory and Mark Hughes were interrogated without proper Miranda warnings. An attorney, hired by their family, presented himself to the police department in asked to speak with the two brothers. He was denied access. After each men denied any involvement in the shooting and passed forensic testing, they were placed in a police vehicle and driven back to the downtown area where they were released. However, DPD retained possession of Mark Hughes' gun, keys and shirt.

21.     Post identifying Mark Hughes as the suspect in the shooting of five police officers remained posted on DPD social media accounts for the next two months.

22.     For the next five months DPD repeatedly rebuffed request by Mark Hughes that his gun and other items be returned to him.

## COUNT I
## UNLAWFUL SEIZURE OF A PERSON
## 42 U.S.C. § 1983

23.     Plaintiffs incorporate by reference paragraphs 1 through 76 as if fully set forth herein.

24.     Dallas Police officers, acting under color of law, unlawfully detained Plaintiffs Mark Hughes and Cory Hughes without probable cause, or reasonable suspicion that any violation or crime had been committed.  Those actions violated Plaintiffs' rights to due process, to equal protection, and give rise to Plaintiffs' claims pursuant to the Fourth Amendment to the Constitution of the United States and 42. U.S.C. § 1983, and their counterparts in the Texas Constitution.

25.     The City of Dallas violated Plaintiffs' constitutional rights to due process, equal

protection, and not to be detained without probable cause or reasonable suspicion when the Defendants arrested and wrongfully detained Plaintiffs.  Plaintiffs were placed in handcuffs and arrested, despite not committing a penal offense or being suspected of committing a crime, and despite defendant having significant evidence that plaintiffs were not involved in the nights shooting including the fact that Mark Hughes' weapon was turned over to law enforcement immediately after shooting began, Mark introduced himself to law enforcement upon arrival and participated with law enforcement in helping protest participants to safety.

26.     Plaintiffs did not pose an immediate threat to the safety of the defendants or others. Plaintiffs were not actively resisting arrest or attempting to evade arrest by flight.  The officer's conduct was objectively unreasonable, resulted from a lack of training, and comported with the City of Dallas' illegal de facto policies.

27.     As a result, Plaintiffs suffered injuries, which resulted directly from their wrongful detention, and/or seizure that was objectively unreasonable and violation of clearly established law.

## COUNT II

### (Section 1983-4th Amendment Property Seizure)

28.     Plaintiff adopts by reference all factual allegations contained above. This is a federal civil rights claim flowing from the unlawful seizure of Plaintiffs personal property, in violation of the Plaintiffs Fourth Amendment right to be free of such seizure absent well established, lawful justification, none of which existed on July 7, 2016.

29.     All officers involved were acting pursuant to and within their discretionary authority when they detained Plaintiff, restricted his movement, cleared him of any involvement

*Plaintiffs' Original Complaint*                6 | Page

with the arrested subject, and deprived him of his property without lawful cause or due process of law. Thus they were acting under color of law, though their actions were not in conformity with the law. It is that nonconformity and its departure from clearly established law that is the basis of this Count.

30.     There were no agency (DPD or City) produced guidelines or other restrictions controlling the conduct of Defendants and fellow officers on the date of the encounter with Plaintiff, as it relates to the seizure of a lawfully carried and possessed firearm. However, the applicable state statutes and clearly established Fourth Amendment seizure law (which all officers are deemed to know) forbade the seizure and retention undertaken by Defendants. The property seized was not in that class of objects which the police may confiscate without consent and without a warrant, and the seizure was meaningful, consequential and significant.

31.     Because the Defendants and the City believe that their seizure of Plaintiff's property constituted no violation of law or policy, declaratory relief is appropriate in order to correct the City's and its employees' misperception.

Wherefore, Plaintiff demands judgment against the individually named Defendants for violating Plaintiffs federally protected constitutional right to be free from a warrantless, unlawful seizure of lawfully possessed private property, and that they be found individually liable for those damages naturally and normally flowing from said seizure, to include nominal damages and a declaration that the Defendants violated Plaintiffs constitutional right to be free from such abuse of police power. In addition, Plaintiff seeks such legal or equitable remedy or remedies as this court may

provide for the illegal acts of Defendants, to include costs and attorney fees of this action, and further demands a trial by jury on all matters so triable.

## COUNT III (City of Dallas)

## (Negligent Training)

32.     Plaintiff adopts and realleges all preceding factual allegations as if fully set forth herein. This is a species of Fourth Amendment claim based upon the woefully inadequate training and supervision of the officers of DPD.

33.     In light of the duties assigned to officers of the Dallas Police Department, encounters with armed citizens are both predictable and frequent in nature.

34.     Agents of the DPD have represented they believe their officers committed no wrongdoing when they seized and retained the long-gun of Mark Hughes and other personal items, though none were contraband, evidence, fruits of a crime or otherwise subject to seizure under any law. The pervasiveness, consistency and uniformity of this view demonstrates deliberate indifference to the rights of citizens to lawfully possess firearms and other property without subjective or arbitrary interference by the police.

35.     The need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

36.     The need for fundamental 4th Amendment training with regard to the lawful and unlawful possession of firearms and weapons is readily apparent.

37.     It cannot be known how extensive and pervasive the misconduct is separate and apart from the case which exposed it. However, there is nothing in the present record that reveals any indication that the search and **seizure** of Plaintiff's property was anything other than proper and justified. It thus remains the apparent policy of the City and repetition is likely to produce the same result.

38.     The policy of deliberate indifference proximately caused the seizure and retention of Plaintiff's property, which seizure and retention were significant and far from inconsequential or harmless.

Wherefore, Plaintiff seeks nominal damages and declaratory relief for the unconstitutional seizure and retention of his property. He seeks a declaration that the actions of the officers violated both federal and state law and such damages and relief as this court may award, together with the recovery of his court costs and attorney's fees.

## COUNT IV (CITY-Conversion/Trespass)

39.     Plaintiff realleges all factual allegations stated above (to include compliance with all statutory conditions precedent) as if fully set forth herein. This claim is for the taking of Plaintiffs firearm and other personal property without legal authority, which claim sounds in both

common law conversion and trespass, those torts being essentially interchangeable in the present

case.

      40.     Plaintiff admits that the initial "seizure" of his property was lawful as he turned

over his weapon in order to avoid any indication of involvement with the ongoing shooting taking

place at the time. However, the seizure and retention of Plaintiffs personal property (the gun, car

keys, shirt), were arbitrary, subjective, wrongful and tortious.


      41.     The private property seized from Plaintiff was neither evidence, contraband, fruits

of a crime or otherwise seizable under any established law, and constituted a wrongful taking, a

trespass on such property and a conversion.

      42.     As alleged above, Plaintiff was compelled to go to the police station to retrieve that

property of his which the police had no authority or lawful cause to seize in the first instance. He

was humiliated, intimidated, fearful, embarrassed and angry at having to do so. He, like many

African-American males, have a historical and cultural apprehension of the police, who he believes

treats African-Americans, particularly males, with suspicion and disparate harshness.

      43.     There was no rational basis nor necessity for the five month retention of Plaintiff's

property. It is Plaintiffs belief that most, if not all, police officers view a black male with a weapon-

even a lawfully possessed- as a threat. Thus, Plaintiff was treated extra-legally, which is to say

outside of and in spite of the law. Furthermore, his property was returned five months later in no

materially different way than it could have been returned the day before. It was a palpable

collective show of police power and authority.

      44.     Plaintiff has suffered at least nominal damages in having to surrender, by a clear

demonstration of official authority, show of force, and explicit demand, his property to agents of

the Dallas **Police** Department in what he sees as a raw abuse of discretion and power. That was an interference with his property rights that the State of Texas has demonstrated an express willingness to protect.

## COUNT V

### Intentional Infliction of Emotional Distress

The actions of defendants in arresting plaintiffs without reasonable suspicion or probable cause, in detaining and interrogating and subjecting plaintiffs to irrelevant, hostile and harassing questioning was done intentionally, wantonly, willfully, maliciously, wrongfully and with such extreme and outrageous character as to cause the severe emotional distress suffered by plaintiffs.

## DAMAGES

45.     Plaintiffs incorporate by reference paragraphs 1 through 86 as if fully set forth herein.  Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiffs:

       a.   Actual damages;

       b.   Pain and suffering;

       c.   Mental anguish and emotional distress suffered by Plaintiffs;

       d.   Pre- and post-judgment interest;

       e.   Attorney's fees and costs of suit; and

       f.   Such other and further relief as this Honorable Court deems just and proper.

## COSTS AND ATTORNEY FEES

46.     Plaintiffs incorporate by reference paragraphs 1 through 79 as if fully set forth herein.  Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b). As such, Plaintiffs request the Court to award costs and attorney's fees incurred in Plaintiffs'

*Plaintiffs' Original Complaint*                    11 | Page

prosecution of this litigation.

## CONDITIONS PRECEDENT

47.     Plaintiffs reserve their rights to plead and prove the damages to which they are

entitled to at the time of trial. All conditions to Plaintiffs' recovery have been performed or have

occurred.

## TRIAL BY JURY

48.     Plaintiffs have paid a jury fee and demands trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to

appear and answer herein; that upon final trial hereof Plaintiffs have and recovers judgment from

Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest

on said judgment at the legal rate; costs of court; and such other and further relief, both general

and special, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

By:  /s/ S. Lee Merritt_____
S. LEE MERRITT
State Bar No. PA 314891
**MERRITT LAW FIRM, LLC**
1910 Pacific Ave Suite 11500
Dallas, TX. 75201
888-647-3041
888-339-2050 – fax
slm@merrittatlaw.com

By: _Angel S. Brown Reveles_
ANGEL BROWN REVELES
State Bar No. TX 24077528
**BROWN REVELES LAW GROUP PLLC**

1910 Pacific Ave Suite 8000
Dallas, TX. 75201
469-249-2239
469-442-0124 – fax
angel@brownreveleslawgroup.com

**ATTORNEYS FOR PLAINTIFFS**