UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK HUGHES and CORY HUGHES, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:18-CV-1770-B |
| CITY OF DALLAS, TEXAS and DALLAS POLICE DEPARTMENT, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Dallas's motion to dismiss for failure to state a claim, filed on November 20, 2018. Doc. 9. For the reasons stated below, the motion is **GRANTED**.

## I.

## BACKGROUND[1]

Mark and Cory Hughes ("Plaintiffs") are two brothers who attended a protest against police brutality in Dallas, Texas on July 7, 2016. Doc. 1, Pls.' Orig. Compl., ¶ 12. During the protest, Mark Hughes carried a long-gun as a statement affirming the Second Amendment rights of African Americans. *Id.* ¶ 13. Before joining the rest of the protestors, Mark Hughes presented his rifle to a law-enforcement officer for inspection. *Id.* ¶ 15.

At about 8:55 p.m., shots rang out at the protest site. *Id.* ¶ 16. Mark Hughes, following the advice of Cory Hughes, turned his rifle over to the police to limit the risk of being mistaken for the

---

[1] The Court draws its factual account from the allegations contained in Plaintiffs' Original Complaint (Doc. 1).

- 1 -

shooter. *Id.* The police provided Mark Hughes with a receipt and business card so the gun could be retrieved the next day. *Id.* Around 10:52 p.m., the Dallas Police Department ("DPD") released a photograph of Mark Hughes on Twitter with the caption "This is our suspect! Please help us find him!" *Id.* ¶ 17. After learning of the Twitter post, Mark Hughes turned himself in to the police. *Id.* ¶ 18. The police then placed Mark Hughes under arrest, confiscating his shirt and car keys before taking him to police headquarters. *Id.* Cory Hughes went to police headquarters after learning of his brother's arrest. *Id.* ¶ 19. Upon his arrival at police headquarters, Cory Hughes was also detained by the authorities. *Id.* Plaintiffs were allegedly then questioned without proper Miranda warnings, while a lawyer hired by the Hughes family was denied access to the Hughes brothers. *Id.* ¶ 20. After the brothers "denied any involvement with the shooting and passed forensic testing," they were returned to the downtown area. *Id.* However, the police did not return Mark Hughes's gun, car keys, or shirt at that time. *Id.* Additionally, the police did not remove the Twitter post identifying Mark Hughes as a suspect for two months. *Id.* ¶ 21. DPD also allegedly rebuffed repeated requests made by Mark Hughes that his possessions be returned. *Id.* ¶ 22.

On July 9, 2018, Plaintiffs filed a complaint with this Court against the City of Dallas ("City") and DPD alleging various federal and state claims: unlawful seizure of a person (*id.* ¶¶ 23–27), unlawful seizure of property (*id.* ¶¶ 28–31), negligent training (*id.* ¶¶ 32–38), conversion/trespass (*id.* ¶¶ 39–44), and the intentional infliction of emotional distress (*id.* at 11). On November 20, 2018, the City filed a motion to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). Doc. 9, Def.'s Mot. Plaintiffs filed a response on January 15, 2019. Doc. 14. Defendant replied on February 5, 2019. Doc. 17. Thus, the motion is now ripe for review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

# III.

# ANALYSIS

In the Plaintiffs' original complaint, five separate claims are made for: (1) unlawful seizure of a person; (2) Fourth Amendment property seizure; (3) negligent training; (4) conversion/trespass, and; (5) intentional infliction of emotional distress. It is not always clear which claims are alleged against which defendant, but it appears that the City is implicated in all five claims.

The first three claims are brought under 42 U.S.C. § 1983. The final two claims, conversion/trespass and the intentional infliction of emotional distress, stem from state tort law. The Court first addresses whether DPD is an entity capable of being sued at all. The Court then will discuss the state-law claims, then the § 1983 claims.

A.  *DPD is a non-jural entity and cannot be sued*

Rule 17 of the Federal Rules of Civil Procedure states that the capacity of an entity like DPD to be sued shall be determined by the law of the state in which the district court is seated. *See* Fed. R. Civ. P. 17(b)(3). Thus, Texas law determines whether DPD possesses the capacity to be sued. Because the City of Dallas is a home-rule municipality, Texas law grants the City the authority to organize a police force. *See* Tex. Loc. Gov't Code § 341.003. The City's Charter states that the City may sue and be sued, but does not grant the same right to DPD. *See* Dallas, Tex., Charter ch. II, § 1(2). Because the City Charter does not give DPD the power to sue or be sued, Plaintiffs may not bring suit against DPD, since it has no legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (applying similar logic to another police department); *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993) (same). Plaintiffs did not respond to the City's characterization of DPD as a non-jural entity.

The Court agrees that DPD is not capable of being sued. Accordingly, the Court **DISMISSES with prejudice** all claims against DPD.

B.  *The City is immune from the state-law tort claims*

The Court also dismisses Plaintiffs' state-law tort claims against the City because the City has not waived sovereign immunity for the claims alleged. Though cities generally possess sovereign immunity from suits that stem from the tortious acts of municipal employees, the Texas Tort Claims Act ("TTCA") waives sovereign immunity in certain limited cases. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008). Under the TTCA, the only tort claims not barred by sovereign immunity are those that involve the use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property. Tex. Civ. Prac. & Rem. Code § 101.021. None of these categories are implicated in Plaintiffs' complaint. Instead, Plaintiffs' state claims are based upon intentional torts, for which the City retains its immunity from suit. *See City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014). The Court therefore **DISMISSES with prejudice** Plaintiffs' claims of conversion/trespass and the intentional infliction of emotional distress.

C.  *Plaintiffs' counsel's briefing inadequately addresses the Motion and Plaintiffs' remaining claims*

As for Plaintiffs' § 1983 claims, the Court finds that these claims should be **DISMISSED without prejudice**. The City's motion raises valid issues with the complaint that Plaintiffs' responsive briefing does not address. In fact, the briefing is largely a summary of § 1983 municipal liability law in general, without clearly applying the law to Plaintiffs' specific facts and claims. And in several of the places where specific facts are cited, Plaintiffs' counsel seems to be arguing a different case. For example, Plaintiffs' counsel asserts that "Plaintiffs clearly identify the specific topic of the custom or policy—to 'deliberate indifference to constitutional rights of activist'—which was the 'moving force'

behind Plaintiffs' constitutional injuries." Doc. 14, Pls.' Resp., 15 (citing to paragraphs of the complaint[2] that do not exist). But neither this quote nor this "specific topic" appear in the complaint. Elsewhere, Plaintiffs' counsel argues that Plaintiffs have specifically identified policymakers—as required in a valid municipal-liability claim—but the quoted language also appears to be from a different case entirely, because it too is not in the complaint. *Compare id.* at 16 (citing the summons (Doc. 5) instead of the complaint (Doc. 1)) *with* Doc. 1, Pls.' Orig. Compl., ¶ 2. Courts typically overlook small typographical errors and accidental misquotations, recognizing that attorneys have only a limited amount of time in the day to juggle the needs of numerous clients. But this briefing does not allow the Court to fully assess the merits of Plaintiffs' claims. And insofar as the briefing adds new theories of liability or new facts—*e.g.*, constitutional claims beyond the Fourth Amendment, or Plaintiffs' status as Black Lives Matters activists—all relevant facts and claims must be alleged in a complaint, not for the first time in a response to a motion to dismiss. *See, e.g.*, Doc. 14, Pls.' Resp., 17.

In short, this sort of briefing does not allow the Court to assess the merits of Plaintiffs' claims, and does not rebut the City's arguments raised in its briefing. Thus, to avoid prejudice to Plaintiffs, the Court **DISMISSES** Plaintiffs' remaining claims **without prejudice** to cure the pleading deficiencies as noted in the City's motion and this opinion.[3] The Court reminds all counsel that future briefing must be supported with appropriate record citations and be responsive to the issues

---

[2] The Court construes this citation to be to the complaint, as that is the only logical conclusion, given Plaintiffs' counsel's argument.

[3] Neither party is opposed to this outcome. Doc. 14, Pls.'s Resp., 22; Doc. 17, Def.'s Reply, 4.

at hand. This opinion should not be construed as commenting on the ultimate merits of Plaintiffs' claims.

IV.

CONCLUSION

For the reasons stated above, the City of Dallas's Motion to Dismiss (Doc. 9), is hereby **GRANTED.** All claims against Defendant Dallas Police Department are **DISMISSED with prejudice**. All of the state-law tort claims against the City are also **DISMISSED with prejudice**. The remaining claims against the City are **DISMISSED without prejudice**. Plaintiffs may replead these claims in an amended complaint within 21 days of the date of this Order, as long as the amended complaint fully addresses and resolves the issues raised in the City's motion.

Failure to replead within the time allotted may result in Plaintiffs' claims being dismissed with prejudice without further notice.

**SO ORDERED.**

**SIGNED: July 15, 2019.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE