**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MARK HUGHES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | | |
| **v.** | § | **CIVIL ACTION NO. 3:18-cv-1770** |
| | § | |
| **CITY OF DALLAS, TEXAS** | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF DALLAS'**
**MOTION FOR SUMMARY JUDGEMENT**

Plaintiff, Mark Hughes, files this Response to Defendants City of Dallas, Texas Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint and would show the Honorable Court as follows:

I.   **BRIEF FACTUAL SUMMARY**

Plaintiff, Mark Hughes ("Hughes" or "Plaintiff") and his brother, Cory Hughes, participated in a peaceful anti-police brutality rally in Dallas, Texas on July 7, 2016, after the shooting deaths of Philando Castile ("Castile") and Alton Sterling. (Complaint paras. 12, 14.) During the protest, Hughes carried a long-gun as a statement affirming the Second Amendment rights of African Americans. (*Id.* para. 13.) Before joining the rest of the protestors, Hughes

presented his rifle to a law enforcement officer for inspection. (*Id.* para. 15.) Throughout the protest, Hughes carried his rifle over his shoulder attached to a gun strap. (*Id.*) Several other counter-protesters also openly displayed firearms during the protest. (*Id.* para. 14.)

At around 8:55 p.m., shots rang out at the protest site. (*Id.* para. 16.) Cory told Hughes to turn over his rifle to the police to limit the risk of being mistaken for the shooter, which Hughes did. (*Id.*) The police provided Hughes with a receipt and a business card so that the rifle could be retrieved the next day. (*Id.* para. 17.)

Around 10:52 p.m., the Dallas Police Department ("DPD") released a statement on Twitter identifying Mark Hughes as the suspect in the shooting, along with a photograph of Hughes holding his AR-15 rifle. (*Id.* para. 19.) DPD Chief David Brown also held a press conference during which he showed a photograph of Hughes, identified him as the suspect, and instructed the public to call 9-1-1 if they saw Hughes. (*Id.* para. 20.)  The public was instructed "this is our suspect please help us find him." A nationwide manhunt for Mark Hughes was then commenced with Hughes' photograph being circulated among Dallas Police Officers as a suspect believed to be armed and dangerous.

Upon learning that he had been identified as the suspect involved in the shooting, Hughes turned himself into the police. (*Id.* para. 25.) The police then placed Hughes under arrest, confiscating his shirt and car keys before taking him to police headquarters. (*Id.* para. 26.) After learning of his brother's arrest, Cory Hughes went to police headquarters, where he was detained for questioning. (*Id.* para. 27.)

Mark Hughes and Cory Hughes were then interrogated without proper Miranda warnings, and denied access to a lawyer hired by the Hughes family. (*Id.* paras. 28-29.) The men were subsequently released after they denied any involvement in the shooting and passed forensic testing. (*Id.* para. 31.) However, the police did not at that time return Hughes' gun, car keys, or shirt. (*Id.* at para. 32.). In addition, the police did not remove the Twitter post identifying Mark Hughes as a suspect for two months. (*Id.* paras. 32, 33.) The DPD refused to return his possessions after his repeated requests to do so. (*Id.*para. 34.)

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). If the moving party bears the burden of proof on the claim or defense upon which she seeks summary judgment, she must present evidence that establishes "beyond peradventure all the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). In other words, the moving party must establish that no reasonable trier of fact could find other than for the movant. *Id.*

However, if the moving party seeks summary judgment on a claim or defense upon which

he does not have the burden of proof, he need not produce evidence showing the absence of a genuine issue of material fact with respect to that claim or defense. In that situation, the moving party need only point out that the evidence contains insufficient proof concerning an essential element of the nonmovant's claim or defense. *See Celotex*, 477 U.S. at 323-25.

A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,106 S.Ct. 1348 (1986); Ragas, 136 F.3d at 458. Further, a Court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097 (2000); *Anderson*, 477 U.S. at 254-55.

## III. Argument

*A. Plaintiff's Amended Complaint offers well pled allegations of unlawful seizure official policy and ratification by a policy maker under 42 U.S.C. § 1983.*

Plaintiff's well-pled Amended Complaint asserts two claims against the City for (1) "unlawful seizure of a person official policy of the municipality," and (2) "unlawful seizure of a person ratification by municipal policymaker." (Complaint at 6-8.) The claims are brought "under, inter alia, the Fourth and Fourteenth Amendments of the United States Constitution and

42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to Plaintiff by constitutional and statutory provisions[.]" To establish municipal liability under § 1983, a plaintiff must prove three elements: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (internal quotation marks omitted).

When viewed in the light most favorable to the nonmoving party, Plaintiff's claims readily meet the plausibility requirement necessary to survive Defendant's motion. Movant relies on the unsubstantiated conclusion that Plaintiff's seizure was a "consensual encounter" in order to justify dismissal. As clearly pled in Plaintiff's Amended Complaint, DPD officers took Hughes into custody only after the official announcement that Hughes was a suspect by the DPD's Twitter account, the official announcement by Chief Brown that Hughes was wanted, and internal police department communications identifying Hughes as the suspect who should be detained for the mass shooting. (*Id.* para. 37.) Hughes had no other choice than to approach officers in an attempt to mitigate the damage already done by Defendant's actions. If Hughes failed to turn himself in immediately after being identified as the key suspect in an ongoing active shooter situation targeting police officers, he risked becoming the victim of further, potentially fatal, violations of his constitutional rights. Submitting to arrest only after an official statement by the DPD releasing his image under the caption "This is our suspect, please help us find him"; a press conference where Chief Brown again released Plaintiff's image and cautioned

the public he was both "armed and dangerous"; after his image was circulated among DPD officers-- cannot be reasonably considered a "consensual encounter". The ongoing manhunt and subsequent arrest represents the initiation of deprivation of Constitutional rights of which Plaintiff complains of herein.

After mischaracterizing Plaintiff's unlawful detention has "consensual" despite the well pled factual allegations contained in the Amended Complaint, Movant offers the conclusory assertion that "Plaintiff's Complaint only shows an isolated incident, and fails to allege facts to establish an official policy of unlawful seizures, or that any such policy was the moving force of any alleged constitutional violation." In doing so, Movant once again encourages the Court to disregard the plain language in Plaintiff's well pled Amended Complaint. Defendant, City of Dallas, does not dispute that Dallas Police Chief David Brown represents its Policymaker in the underlying matter. Plaintiff's Amended Complaint asserts "Chief David Brown publicly announced that Mark Hughes was wanted in connection with the mass shooting of July 8, 2016 despite knowledge that the Dallas Police Department lacked evidence sufficient to create reasonable suspicion or probable cause sufficient to arrest or detain Hughes." The Complaint further alleges "The City of Dallas, through the actions of its Policymaker, Police Chief David Brown, pre-emptively ratified the behavior of subordinates in arresting and detaining Mark Hughes." (*Id* para *37*.) As such, Plaintiff has sufficiently pled an official policy of unlawful seizure as required under the law. Prior to the unlawful detention of Plaintiff, Chief Brown released official statements via a press conference, official Twitter account, and internal police department communications identifying Hughes as the individual wanted for the mass shooting

despite having insufficient evidence to detain or arrest Hughes.

As the policymaker for the Dallas Police Department, Chief Brown's conduct represented the official policy of the municipality even though it does not necessarily form part of a plan or rule developed to govern all occasions.

Chief Brown's conduct and the official statements of the DPD served as an order that DPD were to detain or arrest Hughes without further investigation.

## IV . Conclusion

Wherefore, for the reasons cited herein, Plaintiff Mark Hughes respectfully requests this Court deny Defendant Crews' Motion for Summary Judgment.

Date: January 13, 2019

Respectfully submitted,

By:  /s/ S. Lee Merritt_____
S. LEE MERRITT
State Bar No. PA 314891
**MERRITT LAW FIRM, LLC**
1910 Pacific Ave Suite 11500
Dallas, TX. 75021
888-647-3041
888-339-2050 – fax
slm@merrittatlaw.com

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on January 13, 2020, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including all pro se parties and/or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means. I further certify that I have served to the extent applicable to all case participants not registered for electronic notice by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

_____/s/ S. Lee Merritt_____