UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK HUGHES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-1770-B |
| | § | |
| CITY OF DALLAS, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark Hughes filed an amended complaint asserting that Defendant City of Dallas

unconstitutionally arrested and detained him. *See* Dkt. No. 29. The City moved to dismiss Hughes's

amended complaint. *See* Dkt. No. 30. The Court then referred this action to United States

Magistrate Judge David L. Horan for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No.

31.

After allowing briefing, Judge Horan entered findings and conclusions recommending that

the City's motion to dismiss be denied [Dkt. No. 35] (the "FCR"). As the FCR observed,

> [t]o state claim upon which relief may be granted against the City, Hughes "has two
> burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that
> a municipal policy was the moving force behind the violation." *Sanchez v. Young
> Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*,
> 436 U.S. 658, 694 (1978)).

Dkt. No. 35 at 8. Judge Horan found that Hughes carried both burdens as to pleading.

The City filed objections. *See* Dkt. No. 36. Hughes failed to respond to the objections, and

the 14-day period in which to do so has now passed. *See* FED. R. CIV. P. 72(b)(2).

The City raises two, related objections to the FCR, both concerning municipal liability. First,

it was error to find that "Plaintiff's alleged unconstitutional violations of [ ] former Chief Brown

represented an official policy sufficient to impose liability on the City." Dkt. No. 36 at 3-5. And,

accepting that former Chief Brown's conduct did not represent official policy, it was error to find that

"Plaintiff's Amended Complaint articulates enough facts to plausibly allege a municipal liability claim

against the City for an alleged deprivation of [Hughes's] rights under the Fourth Amendment." *Id.*

at 5-7.

To frame these objections, the FCR concluded that Hughes plausibly alleged municipal

liability under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), by asserting that—as an official

allegedly possessing final policymaking authority—former Chief Brown's conduct served to make the

City liable for the harms Hughes alleged.

As the FCR correctly set out the applicable law,

> "While municipalities can be sued directly under § 1983, *Monell*, establishes
> that they 'cannot be found liable on a theory of vicarious liability or respondeat
> superior.'" *Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting
> *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31,
> 2017) (citing, in turn, *Monell*, 436 U.S. at 690-91)); *see also Salazar-Limon v. City of
> Houston*, 826 F.3d 272, 277 (5th Cir. 2016) ("A municipality and/or its policymakers
> may be held liable under § 1983 'when execution of a government's policy or custom
> ... by those whose edicts or acts may fairly be said to represent official policy, inflicts
> the [constitutional] injury.'" (quoting *Monell*, 436 U.S. at 694; citation omitted)).
>    "In other words, 'the unconstitutional conduct must be directly attributable
> to the municipality through some sort of official action or imprimatur; isolated
> unconstitutional actions by municipal employees will almost never trigger liability.'"
> *Webb*, 925 F.3d at 214 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th
> Cir. 2001); citing *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir.
> 2015)). To assert liability under *Monell*, a plaintiff must therefore allege "(1) an
> official policy (2) promulgated by the municipal policymaker (3) was the moving force
> behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d
> 838, 847 (5th Cir. 2009) (citing *Piotrowski*, 237 F.3d at 578).
>    "Official policy can arise in various forms. It usually exists in the form of
> written policy statements, ordinances, or regulations, but may also arise in the form
> of a widespread practice that is 'so common and well-settled as to constitute a custom
> that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th
> Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn, *Webster v. City of*

*Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))); *accord Alvarez v. City of Brownsville*, 904 F.3d 382, 389-90 (5th Cir. 2018) (en banc).

Fifth Circuit caselaw further provides that "even a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the § 1983 claim.'" *Webb*, 925 F.3d at 214-15 (quoting *Davidson*, 848 F.3d at 395 (citing, in turn, *Pembaur*, 475 U.S. at 480, 482, 484-85); citing *Anderson v. City of McComb*, 539 F. App's 385, 388 n.2 (5th Cir. 2013) ("When the policymakers are the violators, no further proof of municipal policy or custom is required.")); *see also Howell v. Twn. of Ball*, 827 F.3d 515, 527 (5th Cir. 2016) ("A municipal liability claim under *Monell* usually involves allegations of an unconstitutional policy of general applicability, formally adopted by an official policy maker or informally established through long-standing practice or custom. A single unconstitutional action, however, may be sufficient in rare circumstances to impose municipal liability under *Monell*, if undertaken by the municipal official or entity possessing 'final policymaking authority' for the action in question." (citing *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 461 (5th Cir. 2000); *Pembaur*, 475 U.S. at 480)).

Like the Webbs, Hughes does "not allege any written municipal policy or widespread practice. Instead, [his] argument centers on whether an official with 'final policymaking authority' took the actions underpinning [his] § 1983 claim." *Webb*, 925 F.3d at 215.

> "[A] final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to municipal liability under § 1983." This requires the "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Therefore, the "critical question" is generally "to decide who is the final policymaker, which is an issue of state law."

*Id.* (citations omitted).

The Fifth Circuit has "previously found that Texas police chiefs are final policymakers for their municipalities, and it has often not been a disputed issue in the cases." *Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019) (citing *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168 (5th Cir. 2010); *Peterson*, 588 F.3d at 847-48; *Lewis v. Pugh*, 289 F. App'x 767, 776 (5th Cir. 2008)).

And, as explained above, Hughes alleges that the then-Dallas police chief "perform[ed] the specific act that forms the basis of the § 1983 claim"—directing that Hughes be detained or arrested without, as Hughes claims, reasonable suspicion or probable cause. *Davidson*, 848 F.3d at 395 (citing *Pembaur*, 475 U.S. at 480; *Howell*, 827 F.3d at 528; *Anderson*, 539 F. App'x at 388 n.2).

Dkt. No. 35 at 13-16.

As the FCR points out, Hughes cited *Pembaur* in his amended complaint, but the City did

not address that decision in its motion to dismiss. Nonetheless, the City objected to Hughes's alleging

municipal liability under *Pembaur*:

> Whether an individual or entity is a final policymaker is a question of state law. *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016). The Fifth Circuit has previously determined that, under Texas law, the final policymaker for the City of Dallas is the Dallas City Council. *Id.*; *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008). Therefore, under *Groden* and *Bolton*, plaintiff was required to plead sufficient facts to establish an official policy promulgated or ratified by the City's policymaker, the city council. Plaintiff failed to meet this requirement and, therefore, failed to state a claim for a violation under section 1983.
>
> Plaintiff's Amended Complaint alleges that former Chief Brown is the final policymaker for the Dallas police department with respect to day to day decision-making and operation of the Dallas Police Department. However, Plaintiff alleges no facts to establish or from which this Court can reasonably infer that the Dallas City Council delegated final policymaking authority for the Dallas police department to former Chief Brown. This Court has previously held that, as a matter of law, the Dallas City Charter does not characterize the Chief of Police as the final policymaker for purposes of Section 1983 liability, as his actions are subject to review by the City Manager, who is in turn supervised by the City Council. Because Plaintiff fails to allege facts indicating the delegation of policymaking authority to the Chief of Police, Plaintiff's Complaint is deficient in asserting that former Chief Brown is the final policymaker for the Dallas Police Department.

Dkt. No. 36 at 4-5 (citations omitted).

Applicable here, *Groden* also clarified that for purposes of a motion to dismiss, "the specific

identity of the policymaker is a legal question that need not be pled; the complaint need only allege

facts that show an official policy, promulgated or ratified by the policymaker, under which the

municipality is said to be liable." 826 F.3d at 283-84; *see, e.g., Balle v. Nueces Cnty., Tex.*, 952 F.3d

552, 559 (5th Cir. 2017) ("As an initial matter, the district court held that Balle had failed to state

a claim for relief under Rule 12(b)(6) because his complaint did not specifically identify Nueces

County's policymaker. However, 'when a complaint contains sufficient "*factual* allegations," a court

should not grant a motion to dismiss "for imperfect statement of the legal theory supporting the claim asserted.'" We recently held that 'the specific identity of the policymaker is a legal question that need not be pled' in the complaint to survive a motion to dismiss. Therefore, the district court erred in concluding that Balle was 'required to plead the identity of the policymaker.'" (quoting *Groden*, 826 F.3d at 284 (quoting, in turn, *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12. 11 (2014) (per curiam)))).

So, "[b]ecause the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the [actual] policymaker ... to the allegedly unconstitutional policy." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (citing *Groden*, 826 F.3d at 284, 286).

As illustrated in a pre-*Groden* decision from this district, in a suit against the City of Dallas, sufficient factual allegations connecting an allegedly unconstitutional policy to the City's actual policymaker, its City Council, can insulate a complaint from dismissal under Rule 12(b)(6) even if municipal liability is based on actions by the City's police chief. *See Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 950-52 (N.D. Tex. 2014). In *Flanagan*, the plaintiffs alleged "in their amended complaint ... that Dallas City Councilman Dwaine Caraway recently confirmed that the City Council had delegated policy-making authority for police officer training to Chief Brown." *Id.* at 951. The City objected that this allegation was conclusory. *See id.* But the Court held that,

> [u]pon consideration, the undersigned does not find that Plaintiffs' allegation

regarding Councilman Caraway's statement is so conclusory that it cannot support Plaintiffs' allegation that the City has delegated to Chief Brown policymaking authority in the area of police training, even if the Court has its doubts about the veracity of such statement. Although Plaintiffs could have added more specificity to their allegation by including the date on which Caraway made his statement and to which media source, for example, Plaintiffs were not required to plead so specifically at this stage. Moreover, despite the handful of cases Defendant cites, all of which are several years old, and the City Charter that purports to limit Chief Brown's authority, it is plausible that the City Council has more recently delegated policymaking authority to him in the area of training his officers in the use of deadly force.

*Id.* at 951 (citations omitted).

Here, Hughes's amended complaint lacks similar factual allegations to show that it is plausible that Chief Brown was a final policymaker, notably under a theory that he was acting under policymaking—not decisionmaking—authority delegated to him. *See, e.g.,* Dkt. No. 29, ¶ 39 ("As the policymaker for the Dallas P.D., Chief Brown's conduct represented the official policy of the municipality even though it does not necessarily form part of a plan or rule developed to govern all occasions."); *cf. Bolton,* 541 F.3d at 549 ("The distinction between final decisionmaker and final policymaker has its origin in two Supreme Court plurality opinions, *Pembaur* ... and *City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988). Both opinions concluded that discretion to exercise a particular function does not necessarily entail final policymaking authority over that function." (citing *Pembaur,* 475 U.S. at 483-84; *Praprotnik,* 485 U.S. at 130; footnote omitted)).

Hughes's pleading deficiencies as to alleging liability under *Monell* are more like those the Court examined in *Moreno v. City of Dallas,* No. 3:13-cv-4106-B, 2015 WL 3890467 (N.D. Tex. June 18, 2015), in which the Court distinguished *Flanagan*:

Unfortunately, unlike the plaintiff in *Flanagan*, Plaintiff here has neglected to provide factual assertions sufficient to create a reasonable inference that the Chief of Police has been delegated certain authority. Although Plaintiff's Complaint indicates that the City Council "has delegated to the Chief of Police the authority over the Dallas

Police Department, including the authority to hire, fire, discipline employees, and implement policies and procedures for the daily and long-term operations of the Police Department," this statement is no more than a conclusion that could only be reached by considering facts—absent from the Complaint—related to how, when, and by whom a specific authority was delegated.

*Id.* at *5.

Accordingly, the Court, after considering the City's objections as to municipal liability and reviewing the FCR *de novo* or for plain error, as applicable, **ACCEPTS IN PART** the Findings, Conclusions, and Recommendation of the United States Magistrate Judge [Dkt. No. 35]. For the reasons explained in the FCR, the Court concludes that Hughes has alleged a plausible Fourth Amendment violation. But, for the reasons explained above, the Court **DECLINES** to **ACCEPT** the FCR to the extent that it finds that Hughes has alleged a plausible claim of municipal liability against the City of Dallas. The Court therefore **GRANTS** Defendant City of Dallas's motion to dismiss Plaintiff Mark Hughes's amended complaint [Dkt. No. 30] and **DISMISSES** this action with prejudice.

**SO ORDERED.**

**DATE: August 11, 2020.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE